# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| **PLANT MATERIALS, LLC** | **APPELLANT** |
| v. | **CAUSE NO. 1:18CV105-LG-RHW** |
| **ALLIANCE CONSULTING GROUP, LLC, et al.** | **APPELLEES** |
| **IN RE: ALLIANCE CONSULTING GROUP LLC** | **CHAPTER 11 DEBTOR CASE NO. 13-51937-KMS** |

## MEMORANDUM OPINION AND ORDER AFFIRMING THE OPINION AND ORDER OF THE BANKRUPTCY COURT AND DISMISSING APPEAL

**THIS MATTER COMES BEFORE THE COURT** as an appeal taken by Plant Materials, LLC, from the March 19, 2018 Order of the United States Bankruptcy Court for the Southern District of Mississippi. (*See* Bankr. R. 372, ECF No. 2-5.) The appellees are: (1) the debtor, Alliance Consulting Group, LLC; (2) the purchaser of the property at issue, Drying Facility Assets Holding, LLC ("DFAH"); and (3) the former Chapter 11 Trustee and current Plan Agent, Richard W. Cryar. This Court has jurisdiction to hear an appeal of a bankruptcy court order pursuant to 28 U.S.C. § 158. Having considered the parties' briefs, the record of the Bankruptcy Court, and relevant law, the Court finds that the Bankruptcy Court's March 19, 2018 Order should be affirmed, and this appeal dismissed.

## BACKGROUND

Prior to filing for bankruptcy, Alliance was engaged in the production of frac sand, a material that is used in the fracking process.[1] Using a loan that it obtained from Spectrum Origination, LLC, Alliance had built and operated a drying facility on land that it leased from another entity.[2] Elle Investments LLC and Stonehill Institutional Partners LP subsequently acquired the loan. After Alliance began to suffer financial difficulties, a separate entity, Shale Support Services LLC ("S3") took over the management of the drying facility.

On October 3, 2013, some of Alliance's creditors filed an involuntary Chapter 11 petition for relief against Alliance, and the Bankruptcy Court appointed Richard W. Cryar to serve as Trustee. In May 2014, S3 and Cryar, in his capacity as Trustee, entered into an agreement that permitted S3 to continue to operate the drying facility and install a second sand screen to increase production. S3 agreed to pay all expenses incurred for installation of the screen. It also agreed to pay Cryar a per-ton fee for frac sand produced at the facility.

S3 hired the appellant, Plant Materials, to install the screen. The Bankruptcy Court provided the following description of the project:

> S3 owned the Screen and contracted with Plant Materials to install it and to make . . . other modifications. S3 agreed to pay Plant Materials an estimated $162,535.00 per week for this work, which was projected to take approximately three weeks to complete. In fact, Plant Materials worked at the Drying Facility for three months,

---

[1] Fracking is "the injection of fluid into shale beds at high pressure in order to free up petroleum resources (such as oil or natural gas)." Merriam-Webster, http://www.merriam-webster.com/dictionary/fracking (last visited Feb. 13, 2019).
[2] Alliance also owned and operated a mine, which is not at issue in this appeal.

-2-

> beginning in June 2014, and billed S3 for an amount that far exceeded the initial estimate.

(*See* Bankr. R. 374, ECF No. 2-5.) PM claims that S3 did not pay PM for all of the work it performed at the drying facility.

On August 14, 2014, the Bankruptcy Court entered a Confirmation Order approving the free-and-clear sale of the drying facility to the administrative agent of the lenders, Elle and Stonehill. The administrative agent then assigned its right to purchase the drying facility to the appellee DFAH. The screen installed by Plant Materials was not included in the sale of the drying facility but was acquired by DFAH later.

On September 13, 2016, the Bankruptcy Court closed the case and discharged the Trustee. Plant Materials filed a Motion to Reopen the case because it claims that the free and clear sale of the drying facility prevented it from filing a lien on the facility for its unpaid invoices. The Bankruptcy Court denied the Motion due to lack of standing. In the alternative, the Bankruptcy Court determined that Plant Materials failed to carry its burden to show cause to reopen the bankruptcy case. Plant Materials filed the present appeal.

## DISCUSSION

### I. Jurisdiction and Standard of Review

The decision whether to reopen a bankruptcy case is "committed to the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion." *Matter of Faden*, 96 F.3d 792, 796 (5th Cir. 1996); *see also In re Bell Family Trust*, 575 F. App'x 229, 232 (5th Cir. 2014). "A Bankruptcy Court does not

abuse its discretion unless 'its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence.'" *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

**II. Whether the Bankruptcy Court Abused Its Discretion in Holding that Plant Materials Lacks Standing to File a Motion to Reopen**

"A [bankruptcy] case may be reopened on the motion of the debtor or other party in interest . . . ." Fed. R. Bankr. P. 5010. It is undisputed that Plant Materials is not a debtor; thus, the question presented in this appeal is whether Plant Materials is a party in interest. The Bankruptcy Code provides that the term "party in interest" includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). In a case concerning standing to object to a proof of claim, the Fifth Circuit has held that "party in interest" "generally means anyone who has a legally protected interest that could be affected by the bankruptcy case." *Khan v. Xenon Health, L.L.C.* (*In re Matter of Xenon Anesthesia of Tex., P.L.L.C.*), 698 F. App'x 793, 794 (5th Cir. 2017) (citing *In re Megrelis*, No. 13-35704-H3-7, 2014 WL 4558927, at *2 (Bankr. S.D. Tex. Sept. 12, 2014)).

Plant Materials claims that it had a legally protected interest that was affected by the bankruptcy proceeding because Mississippi law provides that "[a]ll contractors, all subcontractors and all materialmen furnishing material for the improvement of real estate" are persons that "shall each have a special lien on the real estate or other property for which they furnish labor, services or materials."

-4-

Miss. Code Ann. § 85-7-403(1)(a). Where, as here, "the building or improvement is erected under or by virtue of any contract with a lessee in possession, and the erection thereof is not in violation of the terms or conditions of the lease, the lien shall attach to the building or improvement, and to the unexpired term of the lease . . . ." Miss. Code Ann. § 85-7-411(1)(a). Plant Materials argues that its right to a lien on the drying facility was extinguished by the Bankruptcy Court's Order approving the free and clear sale of the facility and thus it has standing to reopen the bankruptcy case.

The Bankruptcy Court held that Plant Materials does not have standing because it is not a debtor, creditor, or trustee; rather, it is merely a creditor of a creditor. In support, the Bankruptcy Court cited *Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353 (10th Cir. 1995). The *Nintendo* court first noted, "Although 11 U.S.C. § 1109(b) broadly defines a 'party in interest,' the phrase invites interpretation and "is generally understood to include all persons whose pecuniary interests are[ ] directly affected by the bankruptcy proceedings." 71 F.3d at 356 (citing *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993)). However, in the context of standing to file a motion to reopen, the court held that the term "party in interest" is "implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code." *Id.*

Plant Materials argues that the Bankruptcy Court erred in relying on *Nintendo* because the holding in *Nintendo* conflicts with the Fifth Circuit's

definition of "party in interest" expressed in *Khan* — "anyone who has a legally protected interest that could be affected by the bankruptcy case." *Khan*, 698 F. App'x at 794.[3]

While the Fifth Circuit adopted a broad interpretation of the term "party in interest" in the context of standing to object to a proof of claim, it has not yet addressed whether the term should be limited to debtors, creditors, and trustees in the context of standing to file a motion to reopen. As the Second Circuit has affirmed:

> [I]t is important that a bankruptcy court is not too facile in granting applications for standing. Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization. . . . Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently.

*In re Refco Inc.*, 505 F.3d 109, 118 (2d Cir. 2007) (quoting with approval *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851 (Bankr. S.D.N.Y. 1989)). This is particularly true in the context of a motion to reopen a bankruptcy case in which the bankruptcy plan was long ago confirmed. Permitting a creditor of a creditor to

---

[3] Plant Materials also asserts that *Nintendo* does not support the bankruptcy court's finding in the present case, because the court in *Nintendo* went on to find that Nintendo did not have an interest affected by the bankruptcy case. The court was addressing Nintendo's argument that it had standing to appeal the bankruptcy's order pursuant to the person aggrieved standard. *Nintendo*, 71 F.3d at 357. When analyzing Nintendo's interests, the court was merely rejecting Nintendo's argument. *Id.* This analysis does not change the fact that the *Nintendo* court clearly limited the meaning of "party in interest" to debtors, creditors, and trustees in the context of a motion to reopen a bankruptcy case.

reopen the case and potentially disrupt the plan would thwart the purposes of the Bankruptcy Code.

Nevertheless, even if this Court adopted the broader meaning of "party in interest" that Plant Materials advocates, Plant Materials does not have standing because it does not have "a legally protected interest that could be affected by the bankruptcy case." *See Khan*, 698 F. App'x at 794. At the time the Bankruptcy Court approved the sale of the drying facility, Plant Materials had no "legally protected interest," because, as Plant Materials admits, it was not yet permitted to file a lien on the drying facility. *See* Miss. Code Ann. § 85-7-405(1)(b) (requiring filing of claim of lien within ninety days after the claimant's last work performed, labor, services or materials provided). In addition, Plant Materials never attempted to file a lien on the drying facility, and the deadline for doing so expired before it sought to reopen the bankruptcy case.[4] *See id.* As a result, at all relevant times, Plant Materials did not have a legally protected interest that could be affected by the bankruptcy, such that it did not have standing to file a motion to reopen.

## III. Whether the Bankruptcy Court Abused Its Discretion in Holding No Cause Existed to Reopen the Bankruptcy Case

The Bankruptcy Court held that, even if Plant Materials has standing to file a Motion to Reopen, cause does not exist to reopen. First, the court reasoned that it would be futile to reopen the bankruptcy case because the trustee testified that

---

[4] Plant Materials also voluntarily forfeited its right to file a lien on the screen it installed at the drying facility, even though it does not dispute that the screen was excluded from the free and clear sale approved by the bankruptcy court.

there were no more funds to distribute. Second, the court noted that Plant Materials could file a lawsuit to litigate its claim for nonpayment.

In addition, the Bankruptcy Court stated, "But even if no other forum were available, a contract dispute between non-debtors that has nothing to do with the plan cannot be adjudicated post[-] confirmation by the bankruptcy court." *In re Alliance Consulting Grp. LLC*, 588 B.R. 169, 175 (Bankr. S.D. Miss. 2018). In support of this finding, the Court cited *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, which held, "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, cease to exist, other than for matters pertaining to the implementation or execution of the plan." 266 F.3d 388, 390 (5th Cir. 2001). Since Plant Materials' nonpayment claim against S3 was not a matter "pertaining to the implementation or execution of the plan," the Bankruptcy Court held that it would not have jurisdiction "whether explicitly or under any of the guises Plant Materials would assert it." *In re Alliance*, 588 B.R. at 175. Finally, the Bankruptcy Court noted that the Bankruptcy Code favors finality and that DFAH would be prejudiced if the case were reopened.

Regarding futility, Plant Materials argues that the bankruptcy court erred by failing to address whether it could grant Plant Materials relief from the sale order pursuant to Fed. R. Civ. P. 60(b). Plant Materials also argues that the bankruptcy's Order approving the free-and-clear sale of the drying facility violated its due process rights because it received no notice prior to entry of the Order.

A bankruptcy case may be reopened to administer assets, to provide relief to the debtor, "or for other cause." 11 U.S.C. § 350(b). "In this context, the phrase 'other cause' gives the bankruptcy court 'discretion to reopen a closed estate or proceeding when cause for such reopening has been shown.'" *In re Bell Family Tr.*, 575 F. App'x at 232 (quoting *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings." *Id.* Some of the factors to consider when deciding whether cause exists to reopen include "the delay between the closing of the case and the motion to reopen, whether reopening a case would prejudice the adversary, and other equitable concerns." *In re Double J Operating Co., Inc.*, 37 F. App'x 91, *1 n.4 (5th Cir. 2002) (citing *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864-69 (B.A.P. 2d Cir. 1997)). Additional factors include whether reopening would be futile and the availability of other courts to entertain the claims. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010); *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005); *Chase Auto. Fin., Inc. v. Kinion (In re Kinion)*, 207 F.3d 751, 757 (5th Cir. 2000).

As the Bankruptcy Court noted, Plant Materials filed its Motion to Reopen almost three years after the effective date of the plan and almost one year after the bankruptcy case was closed. DFAH, the purchaser of the drying facility, would be prejudiced if the case were reopened and Plant Materials were granted relief from the free-and-clear sale order. Other courts are available to adjudicate this claim; in

-9-

fact, Plant Materials has filed a lawsuit against S3 and others in the District Court, 150th Judicial District, Bexar County, Texas, concerning the issues underlying its Motion to Reopen. (Appellee's Req. Judicial Notice Ex. 1, ECF No. 17-1.) Therefore, the remaining issues are whether Plant Materials' request for Rule 60(b) relief would be futile and whether Plant Materials was denied due process.

Fed. R. Civ. P. 60, which was made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Despite a thorough review of the record, the Court has not located any reference to the subsection of Rule 60(b) under which Plant Materials intends to proceed. However, in a supplemental brief filed with the Bankruptcy Court, Plant Materials explained that it intends to seek "relief from the Confirmation Order's 'free and clear' effects on [Plant Material's] lien rights, due to the lack of notice and due process afforded to [Plant Materials]." (R. Item 2 Part 3, 179, ECF No. 2-5). This statement indicates that Plant Materials intends to file a Rule 60(b)(4) Motion, alleging that the Bankruptcy Court's order is void due to lack

of due process. *See Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015) ("An order is void only if the court that rendered it lacked jurisdiction of the subject matter, of the parties, or it acted in a manner inconsistent with due process of law.")

"Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)).

> The level of notice required by the Due Process Clause depends on whether a creditor is "known" or "unknown." A debtor must provide actual notice to all "known creditors" in order to discharge their claims. Known creditors include both claimants actually known to the debtor and those whose identities are "reasonably ascertainable." A claimant is "reasonably ascertainable" if he can be discovered through "reasonably diligent efforts." In order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable. By contrast, the debtor need only provide "unknown creditors" with constructive notice by publication. Publication in a national newspaper such as the *Wall Street Journal* is sufficient.

*In re Placid Oil Co.*, 753 F.3d 151, 154-55 (5th Cir. 2014) (internal quotation marks and citations omitted). "At one extreme, the law does not require that a creditor serve upon the debtor a formal complaint in order to make himself 'reasonably ascertainable' or 'known.' However, at a minimum, the debtor must possess 'specific information' about a manifested injury, to make the claim more than merely foreseeable." *Id.* "[U]nknown creditors are those whose 'interests are either

-11-

conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* at 156 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950).

The Trustee had knowledge that Plant Materials was performing work at the drying facility on behalf of a third party, S3, but there is no evidence that the Trustee knew that Plant Materials claimed it had not been paid or might in the future wish to file a lien on the property. It is undisputed that Plant Materials was not one of Alliance's creditors and it had no claim against Alliance. As a result, the Court finds that Plant Materials was an unknown claimant that was only entitled to notice by publication. Since notice by publication was provided, Plant Materials' due process rights were not violated. Plant Materials' request to reopen the case is futile, because its claim that the Bankruptcy Court's confirmation order is void is without merit.

## CONCLUSION

Plant Materials did not have standing to file a motion to reopen in the Bankruptcy Court, because it was not a creditor, debtor, or trustee and it did not have a legally protected interest that could be affected by the bankruptcy at any relevant time. However, even if Plant Materials had standing, it did not demonstrate cause to reopen the bankruptcy case. As a result, the Bankruptcy Court did not abuse its discretion in denying the Motion to Reopen.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the March 19, 2018, Order of the United States Bankruptcy Court for the Southern District of Mississippi is **AFFIRMED**, and this appeal is **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 13th day of February, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE